Jonathan R. Marshall
**BAILEY GLASSER, LLP**
580 California Street, 12th Floor
San Francisco, CA 94104
(304) 345-6555
jmarshall@baileyglasser.com

Bart D. Cohen (*pro hac vice forthcoming*)
**BAILEY & GLASSER LLP**
1055 Thomas Jefferson Street NW, Suite 540
Washington, DC 20007
(202) 463-2101
bcohen@baileyglasser.com

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **KATHY RAFKIN**, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>**DOCTUSUSA, INC.,**<br><br>Defendant. | Case No. 3:26-cv-07437<br><br>**COMPLAINT**<br><br>**CLASS ACTION**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Kathy Rafkin ("Plaintiff"), individually and on behalf of all others similarly situated, brings a class action complaint against Defendant DoctusUSA, Inc. ("Defendant" or "Doctus") and alleges, upon personal knowledge as to her own actions and her counsel's investigations, and upon information and belief as to all other matters, as follows:

**<u>INTRODUCTION</u>**

1. Plaintiff brings this class action against Doctus for its failure to properly secure and safeguard sensitive information that patients entrusted to it, including, without limitation, names and other identifying information, financial information, medical records, and insurance documents (collectively, "personally identifiable information" or "PII" and "protected health information" or "PHI").

2. Doctus provides healthcare information management services to "over a thousand physician practices, clinics, and hospitals across the United States."[1]

3. On or around July 10, 2026, the Deadlock ransomware group disclosed having accessed a large volume of data from Doctus (the "Data Breach"). That data may include patient PII and PHI, which Doctus's customers collect in large amounts from their patients and forward to Doctus.

4. Prior to and through July 10, 2026, Doctus obtained the PII and PHI of Plaintiff and Class Members, including by collecting it directly from Plaintiff and Class Members.

5. Prior to and through July 10, Doctus stored the PII and PHI of Plaintiff and Class Members in an internet-accessible environment on Doctus's network.

6. Despite having knowledge of the Data Breach, Doctus has not provided notice of the Data Breach to its customers' patients.

7. By obtaining, collecting, using, and deriving a benefit from the PII and PHI of Plaintiff and Class Members, Doctus assumed legal and equitable duties to those individuals to protect and safeguard that information from unauthorized access and intrusion.

8. The exposed PII and PHI of Plaintiff and Class Members can be sold on the dark web. Hackers can access and then offer unencrypted, unredacted PII and PHI for sale to criminals, Plaintiff and Class Members now face a lifetime risk of (i) identity theft and (ii) the sharing and detrimental use of their sensitive information.

9. The PII and PHI was compromised due to Doctus's negligent and/or careless acts and omissions and the failure to protect the PII and PHI of Plaintiff and Class Members.

10. Plaintiff and Class Members are at significant risk of identity theft and various other forms of personal, social, and financial harm, including the sharing and detrimental use of their sensitive information. The risk will remain for their respective lifetimes.

11. Plaintiff brings this action on behalf of all persons whose PII and PHI was compromised as a result of Doctus's failure to: (i) adequately protect the PII and PHI of Plaintiff

---

[1] *See* https://www.doctususa.com/about (last accessed July 17, 2026).

and Class Members; (ii) warn Plaintiff and Class Members of Doctus's inadequate information security practices; and (iii) effectively secure hardware containing protected PII and PHI using reasonable and effective security procedures free of vulnerabilities and incidents. Doctus's conduct amounts to negligence and violates federal and state statutes.

12. Plaintiff and Class Members have suffered injury as a result of Doctus's conduct. These injuries include: (i) lost or diminished value of their PII and PHI; (ii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII and PHI; (iii) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to lost time, (iv) the disclosure of their private information, and (v) the continued and certainly increased risk to their PII and PHI, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) may remain backed up in Doctus's possession and is subject to further unauthorized disclosures so long as Doctus fails to undertake appropriate and adequate measures to protect the PII and PHI.

13. Doctus disregarded the rights of Plaintiff and Class Members by intentionally, willfully, recklessly, or negligently failing to take and implement adequate and reasonable measures to ensure that the PII and PHI of Plaintiff and Class Members was safeguarded, failing to take available steps to prevent an unauthorized disclosure of data, and failing to follow applicable, required and appropriate protocols, policies and procedures regarding the encryption of data, even for internal use. As the result, the PII and PHI of Plaintiff and Class Members was compromised through disclosure to an unauthorized third party. Plaintiff and Class Members have a continuing interest in ensuring that their information is and remains safe, and they should be entitled to injunctive and other equitable relief.

## PARTIES

14. Plaintiff Kathy Rafkin is a resident of Oakland, California and has been a patient at Golden State Orthopedics & Spine for over two years. Upon information and belief, Golden State Orthopedics & Spine engaged Doctus to store and manage its patient records.

15. Defendant DoctusUSA, Inc. is a California corporation with its principal place of business at 2010 El Camino Real, Santa Clara, CA 95050. DoctusUSA, Inc. is registered to conduct business in the State of California.

## JURISDICTION AND VENUE

16. This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(C). There are potentially millions of people in the Putative Class Members, the aggregated claims of the individual Class Members exceed the sum or value of $5,000,000 exclusive of interest and costs, and members of the proposed Class are citizens of states different from Defendant, including Plaintiff.

17. This Court has personal jurisdiction over Defendant because Defendant operates, conducts, and engage in substantial business in this judicial district.

18. Venue is proper in this District under 28 U.S.C. § 1391(a)(1) because Defendant's principal place of business is located in this District, Plaintiff resides in this District, and a substantial part of the events and omissions giving rise to this action occurred in this District.

## FACTUAL ALLEGATIONS

### *Doctus's Business*

19. Doctus provides healthcare information management services to healthcare providers nationwide. It claims to have over 20 years of experience and to employ over 700 professionals.[2]

20. Doctus further claims to "set[] the gold standard for HIPAA Privacy and Security. … At Doctus, your data isn't just managed—it's fortified."[3]

21. On information and belief, in the ordinary course of business as a condition of service, Doctus's customers require patients to provide significant amounts of sensitive personal and private information, such as the PII and PHI compromised in the Data Breach.

---

[2] *See* https://www.doctususa.com/ (last accessed July 17, 2026). "HIPAA" refers to the Health Insurance Portability and Accountability Act of 1996.

[3] *Id*.

22. Doctus's website includes an entire page broadly addressed to "HIPAA Compliance," on which Doctus claims that "[y]our data security is our top priority," and that "[a]ll personnel and business partners are trained in security policies and regulations."[4]

23. Doctus further claims to have "[e]mbraced security and confidentiality standards early on and insisted that all partners and associates adhere to it [sic]."[5]

24. By obtaining, collecting, using, and deriving a benefit from Plaintiff and Class Members' PII and PHI, Doctus assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiff and Class Members' PII and PHI from unauthorized disclosure.

25. Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their PII and PHI.

26. Plaintiff and Class Members relied on Doctus to keep their PII and PHI confidential and securely maintained, to use this information for business and health purposes only, and to make only authorized disclosures of this information.

27. Doctus collected the PII and PHI of Plaintiff and Class Members and stored it, unencrypted, on Doctus's internet-accessible network.

28. Plaintiff and Class Members relied on Doctus to keep their PII and PHI confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information. Plaintiff and Class Members demand security to safeguard their PII and PHI.

29. Doctus had a duty to adopt reasonable measures to protect Plaintiff's and Class Members' PII and PHI from involuntary disclosure to third parties.

***The Data Breach***

30. On or around July 10, 2026, the ransomware group Deadlock disclosed having extracted a wide variety of information from Doctus's network.

---

[4] https://www.doctususa.com/hipaa (last accessed July 17, 2026).

[5] https://www.doctususa.com/about (last accessed July 17, 2026).

31. To date, Doctus has not disclosed the Data Breach to its customers' patients or the State of California Attorney General, as required by law and as promised under its own Privacy Practices.

32. Doctus did not use reasonable security procedures and practices appropriate to the nature of the sensitive, unencrypted information it was maintaining for Plaintiff and Class Members, causing the exposure of Plaintiff's and Class Members' PII and PHI.

33. Because Doctus had a duty to protect Plaintiff's and Class Members' PII and PHI, Doctus should have accessed readily available and accessible information about potential threats for the unauthorized exfiltration and misuse of such information.

34. The unencrypted PII and PHI of Plaintiff and Class Members may now appear on the dark web, or simply fall into the hands of companies that will use the detailed PII and PHI for targeted marketing without the approval of Plaintiff and Class Members. Unauthorized individuals have or can easily access and view the PII and PHI of Plaintiff and Class Members.

***PII and PHI are Valuable and Subject to Unauthorized Disclosure***

35. Doctus was aware that PII and PHI collected by Doctus is highly sensitive and of significant value to those who would use it for wrongful purposes.

36. PII and PHI are valuable commodities to identity thieves.

37. In October 2019, the Federal Bureau of Investigation published online an article titled "High-Impact Ransomware Attacks Threaten US. Businesses and Organizations" that, among other things, warned that "[a]lthough state and local governments have been particularly visible targets for ransomware attacks, ransomware actors have also targeted health care organizations, industrial companies, and the transportation sector."[6]

38. In April 2020, ZDNet reported, in an article titled "Ransomware mentioned in 1,000+ SEC filings over the past year," that "[r]ansomware gangs are now ferociously aggressive

[6] FBI, High-Impact Ransomware Attacks Threaten U.S. Businesses and Organizations (Oct. 2, 2019) (emphasis added), *available at* https://www.ic3.gov/Media/2019/PSA191002 (last accessed July 17, 2026).

in their pursuit of big companies. They breach networks, use specialized tools to maximize damage, leak corporate information on dark web portals, and even tip journalists to generate negative news for companies as revenge against those who refuse to pay."[7]

39. In September 2020, the United States Cybersecurity and Infrastructure Security Agency published online a "Ransomware Guide" advising that "[m]alicious actors have adjusted their ransomware tactics over time to include pressuring victims for payment by threatening to release stolen data if they refuse to pay and publicly naming and shaming victims as secondary forms of extortion."[8]

40. As the FTC recognizes, identity thieves can use this information to commit an array of crimes including identify theft, and medical and financial fraud.[9] Indeed, a robust illegal market exists in which criminals openly post stolen PII and PHI on multiple underground websites, commonly referred to as the "dark web." PHI can sell for as much as $363 on the dark web, according to the Infosec Institute.[10] Moreover, "fullz" packages, which include "extra information about [a] legitimate credit card owner in case" a scammer's "bona fides are challenged when they attempt to use the credit card" are also offered on the dark web.[11]

41. PHI is particularly valuable because criminals can use it to target victims with frauds and swindles that take advantage of the victim's medical conditions or victim settlements.

[7] ZDNet, Ransomware mentioned in 1,000+ SEC filings over the past year (Apt 30, 2020) (emphasis added), *available at* http$://www.zdnct.conVarticle/iansomware-mentiosKd-in-1000-sec-filings-ovcr-the-past-year/ (last accessed July 17, 2026).

[8] U.S. CISA, Ransomware Guide – September 2020, *available at* https://www.cisa.gov/stopransomware/ransomware-guide (last accessed July 17, 2026).

[9] Federal Trade Commission, What To Know About Identity Theft (available at https://consumer.ftc.gov/articles/what-know-about-identity-theft) (last accessed July 17, 2026).

[10] Center for Internet Security, *Data Breaches: In the Healthcare Sector* (available at https://www.cisecurity.org/blog/data-breaches-in-the-healthcare-sector/) (last accessed July 17, 2026).

[11] Stolen PII & Ramifications: Identity Theft and Fraud on the Dark Web, Armor (Apr. 3, 2018), https://res.armor.com/resources/blog/stolen-pii-ramifications-identity-theft-fraud- dark-web/ (last accessed July 17, 2026).

It can be used to create fake insurance claims, allowing for the purchase and resale of medical equipment, or gain access to prescriptions for illegal use or resale.

42. Medical identity theft can result in inaccuracies in medical records and costly false claims. It can also have life-threatening consequences. If a victim's PHI is mixed with other records, it can lead to misdiagnosis or mistreatment. "Medical identity theft is a growing and dangerous crime that leaves its victims with little to no recourse for recovery," reported Pam Dixon, executive director of World Privacy Forum. "Victims often experience financial repercussions and worse yet, they frequently discover erroneous information has been added to their personal medical files due to the thief's activities."[12]

43. The ramifications of Doctus's failure to keep Plaintiff's and Class Members' PII and PHI secure are long-lasting and severe. Once PII and PHI are stolen, fraudulent use of that information and damage to victims may continue for years. Fraudulent activity might not show up for months or even years thereafter.

44. Further, criminals often trade stolen PII and PHI for years following a breach. Cybercriminals can post stolen PII and PHI on the internet, thereby making such information publicly available.

45. Approximately 21% of victims do not realize their identity has been compromised until more than two years after it happens.[13] This gives thieves ample time to seek multiple treatments under the victim's name. Forty percent of consumers found out they were a victim of medical identity theft only when they received collection letters from creditors for expenses that were incurred in their names.[14]

---

[12] Michael Ollove, The Rise of Medical Identity Theft in Healthcare, Kaiser Health News (Feb. 7, 2014) (available at https://khn.org/news/rise-of-indentity-theft/) (last accessed July 17, 2026).

[13] *See* Medical ID Theft Checklist (available at https://www.identityforce.com/blog/medical-id-theft-checklist-2) (last accessed July 17, 2026).

[14] Experian, The Potential Damages and Consequences of Medical Identity Theft and Healthcare Data Breaches (available at https://www.experian.com/assets/data-breach/white-papers/consequences-medical-id-theft-healthcare.pdf) (last accessed July 17, 2026).

46. This readily available and accessible information about the threat of cyberattacks on the healthcare sector confirms that, prior to the Data Breach, Doctus knew or should have known that (i) cybercriminals were targeting big companies such as Doctus, (ii) cybercriminals were ferociously aggressive in their pursuit of big companies such as Doctus, (iii) cybercriminals were leaking corporate information on dark web portals, and (iv) cybercriminals' tactics included threatening to release stolen data.

47. In light of the information readily available and accessible on the internet before the Data Breach, Doctus, having elected to store the unencrypted PII and PHI of Plaintiff and Class Members in an internet-accessible environment, had reason to be on guard for the exfiltration of the PII and PHI and Doctus's type of business had cause to be particularly on guard against such an attack.

48. Prior to the Data Breach, Doctus knew or should have known that there was a foreseeable risk that Plaintiff's and Class Members' PII and PHI could be accessed, exfiltrated, and published as the result of a cyber-attack.

49. Prior to the Data Breach, Doctus knew or should have known that it should have encrypted the sensitive data elements within the PII and PHI to protect against their publication and misuse in the event of a cyberattack.

50. Doctus knew, or should have known, the importance of safeguarding PII and PHI entrusted to them and of the foreseeable consequences if their data security systems were breached. This includes the significant costs that would be imposed on Plaintiff and Class Members because of a breach. Doctus failed, however, to take adequate cybersecurity measures to prevent the Data Breach from occurring.

***Doctus Acquires, Collects and Stores***
***Plaintiff's and Class Members' PII and PHI.***

51. Doctus acquired, collected, and stored the PII and PHI of Plaintiff and Class Members.

52. By obtaining, collecting, and storing the PII and PHI of Plaintiff and Class Members, Doctus assumed legal and equitable duties and knew or should have known that it was responsible for protecting the PII from disclosure.

53. Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their PII and PHI and relied on Doctus to keep their PII and PHI confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

54. As explained by the Federal Bureau of Investigation, "[p]revention is the most effective defense against ransomware and it is critical to take precautions for protection."[15]

55. To prevent and detect ransomware attacks, including the ransomware attack that resulted in the Data Breach, Doctus could and should have implemented, as recommended by the United States Government, the following measures:

a. Implement an awareness and training program. Because end users are targets, employees and individuals should be aware of the threat of ransomware and how it is delivered.

b. Enable strong spam filters to prevent phishing emails from reaching the end users and authenticate inbound email using technologies like Sender Policy Framework (SPF), Domain Message Authentication Reporting and Conformance (DMARC), and DomainKeys Identified Mail (DKIM) to prevent email spoofing.

c. Scan all incoming and outgoing emails to detect threats and filter executable files from reaching end users.

d. Configure firewalls to block access to known malicious IP addresses.

---

[15] *See* How to Protect Your Networks from RANSOMWARE, at 3, *available at* https://www.fbi.gov/file-repository/ransomware-prevention-and-response-for-cisos.pdf/view (last accessed Mar 8, 2023).

e. Patch operating systems, software, and firmware on devices. Consider using a centralized patch management system.

f. Set anti-virus and anti-malware programs to conduct regular scans automatically.

g. Manage the use of privileged accounts based on the principle of least privilege: no users should be assigned administrative access unless absolutely needed; and those with a need for administrator accounts should only use them when necessary.

h. Configure access controls—including file, directory, and network share permissions— with least privilege in mind. If a user only needs to read specific files, the user should not have write access to those files, directories, or shares.

i. Disable macro scripts from office files transmitted via email. Consider using Office Viewer software to open Microsoft Office files transmitted via email instead of full office suite applications.

j. Implement Software Restriction Policies (SRP) or other controls to prevent programs from executing from common ransomware locations, such as temporary folders supporting popular Internet browsers or compression/decompression programs, including the AppData/ LocalAppData folder.

k. Consider disabling Remote Desktop protocol (RDP) if it is not being used.

l. Use application whitelisting, which only allows systems to execute programs known and permitted by security policy.

m. Execute operating system environments or specific programs in a virtualized environment

n. Categorize data based on organizational value and implement physical and logical separation of networks and data for different organizational units.[16]

56. To prevent and detect ransomware attacks, including the ransomware attack that resulted in the Data Breach, Doctus could and should have implemented, as recommended by the United States Cybersecurity & Infrastructure Security Agency, the following measures:

a. **Update and patch your computer.** Ensure your applications and operating systems (OSs) have been updated with the latest patches. Vulnerable applications and OSs are the target of most ransomware attacks....

b. **Use caution with links and when entering website addresses.** Be careful when clicking directly on links in emails, even if the sender appears to be someone you know. Attempt to independently verify website addresses (e.g., contact your organization's helpdesk, search the internet for the sender organization's website or the topic mentioned in the email). Pay attention to the website addresses you click on, as well as those you enter yourself. Malicious website address often appear almost identical to legitimate sites, often using a slight variation in spelling or a different domain (e.g., .com instead of .net)....

c. **Open email attachments with caution.** Be wary of opening email attachments, even from senders you think you know, particularly when attachments are compressed files or ZIP files.

d. **Keep your personal information safe.** Check a website's security to ensure the information you submit is encrypted before you provide it....

e. **Verify email senders.** If you are unsure whether or not an email is legitimate, try to verify the email's legitimacy by contacting the sender

[16] *Id.* at 3-4.

directly. Do not click on any links in the email. If possible, use a previous (legitimate) email to ensure the contact information you have for the sender is authentic before you contact them.

f. **Inform yourself.** Keep yourself informed about recent cybersecurity threats and up to date on ransomware techniques. You can find information about known phishing attacks on the Anti-Phishing Working Group website. You may also want to sign up for CISA product notifications, which will alert you when a new Alert, Analysis Report, Bulletin, Current Activity, or Tip has been published.

g. **Use and maintain preventative software programs**. Install antivirus software, firewalls, and email filters—and keep them updated—to reduce malicious network traffic....[17]

57. To prevent and detect ransomware attacks, including the ransomware attack that resulted in the Data Breach, Doctus could and should have implemented, as recommended by the Microsoft Threat Protection Intelligence Team, the following measures:

a. **Secure Internet-facing assets.**

i. Apply latest security updates

ii. Use threat and vulnerability management

iii. Perform regular audit; remove privileged credentials;

b. **Thoroughly investigate and remediate alerts**

i. Prioritize and treat commodity malware infections as potential full compromise;

c. **Include IT Pros in security discussions**

---

[17] See Security Tip (STL9-001) Protecting Against Ransomware (original release date Apr. 11, 2019), available at https://www.cisa.gov/sites/default/files/publications/Healthcare-and-Public-Hcalth-Sector-Cyber-CTEP-Situation-Manual-XXX-XX-XXXX (last accessed July 17, 2026).

i. Ensure collaboration among [security operations], [security admins], and [information technology] admins to configure servers and other endpoints securely;

d. **Build credential hygiene**

i. Use [multifactor authentication] or [network level authentication] and use strong, randomized, just-in-time local admin passwords

e. **Apply principle of least-privilege**

i. Monitor for adversarial activities

ii. Hunt for brute force attempts

iii. Monitor for cleanup of Event Logs

iv. Analyze logon events

f. **Harden infrastructure**

i. Use Windows Defender Firewall

ii. Enable tamper protection

iii. Enable cloud-delivered protection

iv. Turn on attack surface reduction rules and [Antimalware Scan Interface] for Office [Visual Basic for Applications].[18]

58. Given that Doctus was storing the PII and PHI of thousands of individuals, Doctus could and should have implemented all of the above measures to prevent and detect ransomware attacks.

59. The occurrence of the Data Breach indicates that Doctus failed to adequately implement one or more of the above measures to prevent ransomware attacks, resulting in the Data Breach and the exposure of the PII and PHI of thousands of individuals, including Plaintiff and Class Members.

---

[18] *See* Human-operated ransomware attacks: A preventable disaster (Mar 5, 2020), *available at* https://www.microsoft.com/security/blog/2020/03/05/human-operated-ransomware-attacks-a preventable-disaster/ (last accessed July 17, 2026).

***Doctus's Lax Security Violates HIPAA***

60. Doctus had a non-delegable duty to ensure that all PHI it collected and stored was secure.

61. Doctus is bound by HIPAA (see 45 C.F.R. § 160.102) and, as a result, is required to comply with the HIPAA Privacy Rule and Security Rule, 45 C.F.R Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C.

62. These rules establish national standards for the protection of patient information, including protected health information, defined as "individually identifiable health information" which either "identifies the individual" or where there is a "reasonable basis to believe the information can be used to identify the individual," that is held or transmitted by a healthcare provider. See 45 C.F.R. § 160.103.

63. HIPAA limits the permissible uses of "protected health information" and prohibits unauthorized disclosures of "protected health information."

64. HIPAA requires that Doctus implement appropriate safeguards for this information.

65. Despite these requirements, Doctus failed to comply with its duties under HIPAA and their own Privacy Practices. In particular, Doctus failed to:

a. maintain an adequate data security system to reduce the risk of data breaches and cyber-attacks;

b. adequately protect Plaintiff's and Class Members' PHI;

c. ensure the confidentiality and integrity of electronic PHI created, received, maintained, or transmitted, in violation of 45 C.F.R. § 164.306(a)(1);

d. implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights, in violation of 45 C.F.R. § 164.312(a)(1);

e. implement adequate policies and procedures to prevent, detect, contain, and correct security violations, in violation of 45 C.F.R. § 164.308(a)(1)(i);

f. implement adequate procedures to review records of information system activity regularly, such as audit logs, access reports, and security incident tracking reports, in violation of 45 C.F.R. § 164.308(a)(1)(ii)(D);

g. protect against reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding individually identifiable health information, in violation of 45 C.F.R. § 164.306(a)(3);

h. ensure compliance with the electronic PHI security standard rules by their workforce, in violation of 45 C.F.R. § 164.306(a)(4); and/or

i. train all members of their workforce effectively on the policies and procedures with respect to PHI as necessary and appropriate for the members of their workforce to carry out their responsibilities and to maintain security of PHI, in violation of 45 C.F.R. § 164.530(b)

66. Doctus failed to comply with its duties under HIPAA despite being aware of the risks associated with unauthorized access to Plaintiff's and Class Members' PHI.

***Doctus Violated FTC Guidelines***

67. The Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45, prohibited Doctus from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission ("FTC") has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' PII is an "unfair practice" in violation of the FTC Act. See, e.g., Fed. Trade Comm'n v. Wyndham Worldwide Corp., 799 F.3d 236 (3d Cir. 2015).

68. The FTC has promulgated several guides for businesses that reflect the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.[19]

69. In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established data security guidelines for businesses.[20] The guidelines reflect that businesses should protect the PII that they keep; properly dispose of PII that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.

70. The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to confidential data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.[21]

71. The FTC has brought enforcement actions against businesses for failing to protect customer data adequately and reasonably, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

72. Doctus failed to properly implement basic data security practices. Doctus's failure to employ reasonable and appropriate measures to protect against unauthorized access to

---

[19] Federal Trade Commission, Start With Security: A Guide for Business (available at https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf) (last accessed July 17, 2026).

[20] Federal Trade Commission, Protecting Personal Information: A Guide for Business (available at https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf) (last accessed July 17, 2026).

[21] FTC, *Start With Security*, *supra*.

Plaintiff's and Class Members' PII and PHI constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

73. Doctus was at all times fully aware of its obligation to protect Plaintiff's and Class Members' PII and PHI because of its position as a healthcare provider. Doctus was also aware of the significant repercussions that would result from its failure to do so.

***The Data Breach Exposed Plaintiff and Class Members to Identity Theft and Out-of-Pocket Losses***

74. Plaintiff and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of their rights. They are incurring and will continue to incur such damages in addition to any fraudulent use of their PII and PHI.

75. Despite all the publicly available knowledge of known and foreseeable consequences of the disclosure of PII and PHI, Doctus's policies and practices with respect to maintaining the security of Plaintiff's and Class Members' PII and PHI were reckless, or at the very least, negligent.

76. In virtually all contexts, the expenditure of time has consistently been recognized as compensable, and for many people, it is the basis on which they are compensated. Plaintiff and Class Members should be compensated for the time they have expended because of Doctus's misfeasance.

77. Once PII and PHI are stolen, fraudulent use of that information and damage to victims may continue for years. Consumer victims of data breaches are more likely to become victims of identity fraud.[22]

78. As a result of the wide variety of injuries that can be traced to the Data Breach, Plaintiff and Class Members have and will continue to suffer financial loss and other actual harm for which they are entitled to damages, including, but not limited to, the following:

a. invasion of privacy;

b. theft of their PII and PHI;

[22] 2025 LexisNexis True Cost of Fraud Study, https://risk.lexisnexis.com/insights-resources/research/us-ca-true-cost-of-fraud-study (last accessed July 17, 2026).

c. lost or diminished value of their PII and PHI;

d. lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach;

e. loss of the benefit of their bargain;

f. lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach;

g. statutory damages;

h. nominal damages; and

i. the continued and certainly increased risk to their PII and PHI, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Doctus's possession and is subject to further unauthorized disclosures so long as Doctus fails to undertake appropriate and adequate measures to protect the PII and PHI.

***Plaintiff's Experience***

79. Plaintiff Kathy Rafkin has received medical services since no later than 2024 at various GSOS facilities in California. Upon information and belief, GSOS engaged Doctus to store and manage its patient records.

80. To receive the medical services provided by GSOS, Ms. Rafkin provided her PII and PHI to Doctus.

81. At the time of the Data Breach, Doctus retained Ms. Rafkin's PII and PHI.

82. Ms. Rafkin greatly values her privacy and is very careful about sharing her sensitive PII and PHI. Ms. Rafkin diligently protects her PII and PHI and takes proactive steps to ensure her PII and PHI are kept safe and secure, and stores any documents containing PII and PHI in a safe and secure location. She has never knowingly transmitted unencrypted sensitive PII or PHI over the Internet or any other unsecured source.

83. Doctus obtained and continues to maintain Ms. Rafkin's PII and PHI and has a continuing legal duty and obligation to protect that PII and PHI from unauthorized access and disclosure.

84. The Data Breach has caused Ms. Rafkin to suffer imminent and impending injury arising from the substantially increased risk of additional future fraud, identity theft, and misuse resulting from her PII and PHI being placed in the hands of criminals.

85. As a result of the Data Breach, Ms. Rafkin is presently at risk and will continue to be at increased risk of identity theft and fraud for years to come.

86. Ms. Rafkin has a continuing interest in ensuring that her PII and PHI, which, upon information and belief, remain backed up in Doctus's possession, are protected and safeguarded from future breaches.

## CLASS ALLEGATIONS

87. This civil action is properly maintainable as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. Plaintiff seeks certification of the following class:

> All residents of the United States whose PII and/or PHI was compromised in the Data Breach.

88. Excluded from the Class are Doctus, any entity in which Doctus has a controlling interest, and Doctus's officers, directors, legal representatives, successors, subsidiaries, and assigns. Also excluded from the Class are any judicial officer presiding over this matter, members of their immediate family, and members of their judicial staff.

89. Plaintiff reserves the right to modify or amend the definition of the proposed Class as additional information becomes available to Plaintiff.

90. **Numerosity:** Class Members are so numerous that individual joinder of all Class Members is impracticable. Upon information and belief, the number of individuals whose PII and PHI was exposed by Doctus is at least in the tens of thousands. All Class Members' names and addresses are available from Doctus's records, and Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods.

91. **Commonality:** There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

a. Whether and to what extent Doctus had a duty to protect the PII and PHI of Class Members;

b. Whether Doctus was negligent in collecting and storing Plaintiff's and Class Members' PII and PHI;

c. Whether Doctus had duties not to disclose the PII and PHI of Class Members to unauthorized third parties;

d. Whether Doctus took reasonable steps and measures to safeguard Plaintiff's and Class Members' PII and PHI;

e. Whether Doctus failed to adequately safeguard the PII and PHI of Class Members;

f. Whether Doctus failed to implement and maintain reasonable security policies and practices appropriate to the nature and scope of the PII and PHI compromised in the Data Breach;

g. Whether Doctus adequately, promptly, and accurately informed Plaintiff and Class Members that their PII and PHI had been compromised;

h. Whether Plaintiff and Class Members are entitled to actual damages, statutory damages, and/or punitive damages because of Doctus's wrongful conduct;

i. Whether Plaintiff and Class Members are entitled to restitution because of Doctus's wrongful conduct;

j. Whether Plaintiff and Class Members are entitled to injunctive relief to redress the imminent and ongoing harm they face because of the Data Breach; and

k. Whether Plaintiff and Class Members are entitled to identity theft protection for their respective lifetimes.

92. **Typicality:** Plaintiff's claims are typical of those of other Class Members because Plaintiff's PII and PHI, like that of every other Class Member, was disclosed by Doctus. Plaintiff's claims are typical of those of the other Class Members because, *inter alia*, all Class Members were injured through Doctus's common misconduct. Plaintiff is advancing the same claims and legal theories individually and on behalf of all other Class Members, and there are no defenses that are unique to Plaintiff. Plaintiff's claims and Class Members' claims arise from the same operative facts and are based on the same legal theories.

93. **Adequacy:** Plaintiff is an adequate representative of the Class because Plaintiff is a member of the Class and is committed to pursuing this matter against Doctus to obtain relief for the Class. Plaintiff has no conflicts of interest with the Class. Plaintiff's counsel are competent and experienced in litigating class actions, including extensive experience in data breach litigation. Plaintiff intends to vigorously prosecute this case and will fairly and adequately protect the Class's interests.

94. **Policies Generally Applicable to the Class:** This class action is also appropriate for certification because Doctus has acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members, and making final injunctive relief appropriate with respect to the Class as a whole. Doctus's policies challenged herein apply to and affect Class Members uniformly and Plaintiff's challenge of these policies hinges on Doctus's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

95. **Superiority:** Class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporations, like Doctus. Even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

96. The nature of this action and the nature of laws available to Plaintiff and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiff and Class Members for the wrongs alleged because Doctus would necessarily gain an unconscionable advantage in non-class litigation, since Doctus would be able to exploit and overwhelm the limited resources of each individual Class Member with

superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiff was exposed is representative of that experienced by Class Members and will establish the right of each Class Member to recover on the causes of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

97. The litigation of Plaintiff's claims is manageable. Doctus's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrate that there would be no significant manageability problems with maintenance of this lawsuit as a class action.

98. Adequate notice can be given to Class Members directly using information maintained in Doctus's records.

99. Unless a class-wide injunction is issued, Doctus may continue to maintain inadequate security with respect to the PII and PHI of Class Members, Doctus may continue to refuse to provide proper notification to Class Members regarding the Data Breach, and Doctus may continue to act unlawfully as set forth in this Complaint.

100. Doctus has acted or refused to act on grounds generally applicable to the Class and, accordingly, final injunctive or corresponding declaratory relief with regard to the Class Members as a whole is appropriate.

## COUNT I
**Negligence**
**(On Behalf of Plaintiff and Class Members)**

101. Plaintiff and Class Members re-allege and incorporate by reference herein all of the preceding paragraphs.

102. Doctus has full knowledge of the sensitivity of the PII and PHI and the types of harm that Plaintiff and Class Members could and would suffer if the PII and PHI were wrongfully disclosed.

103. Doctus knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of the PII and PHI of Plaintiff and Class Members

involved an unreasonable risk of harm to Plaintiff and Class Members; even if the harm occurred through the criminal acts of a third party.

104. Doctus had a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties. This duty includes, among other things, designing, maintaining, and testing Doctus's security protocols to ensure that the PII and PHI of Plaintiff and Class Members in Doctus's possession was adequately secured and protected.

105. Doctus also had a duty to exercise appropriate clearinghouse practices to remove from an internet-accessible environment the PII and PHI it was no longer required to retain pursuant to regulations and had no reasonable need to maintain in an internet-accessible environment.

106. Doctus also had a duty to have procedures in place to detect and prevent the improper access and misuse of the PII and PHI of Plaintiff and Class Members.

107. Doctus's duty to use reasonable security measures arose as a result of the special relationship that existed between Doctus and Plaintiff and Class Members. That special relationship arose because Doctus acquired Plaintiff's and the Class's confidential PII in the regular course of its business.

108. Doctus was subject to an "independent duty," untethered to any contract between Doctus and Plaintiff or Class Members.

109. A breach of security, unauthorized access, and resulting injury to Plaintiff and Class Members was reasonably foreseeable, particularly in light of Doctus's inadequate security practices.

110. Plaintiff and Class Members were the foreseeable and probable victims of any inadequate security practices and procedures. Doctus knew or should have known of the inherent risks in collecting and storing the PII and PHI of Plaintiff and Class Members, the critical importance of providing adequate security of that PII and PHI, and the necessity for encrypting PII and PHI stored on Doctus's systems.

111. Doctus's own conduct created a foreseeable risk of harm to Plaintiff and Class Members. Doctus's misconduct included, but was not limited to, its failure to take the steps and opportunities to prevent the Data Breach as set forth herein. Doctus's misconduct also included its decisions not to comply with industry standards for the safekeeping of the PII and PHI of Plaintiff and Class Members, including basic encryption techniques freely available to Doctus.

112. Plaintiff and Class Members had no ability to protect their PII and PHI that was in, and possibly remains in, Doctus's possession.

113. Doctus was in a position to protect against the harm suffered by Plaintiff and Class Members as a result of the Data Breach.

114. Doctus had and continues to have a duty to adequately disclose that the PII and PHI of Plaintiff and Class Members within Doctus's possession might have been compromised, how it was compromised, and precisely the types of data that were compromised and when. Such notice was necessary to allow Plaintiff and Class Members to (i) take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their PII and PHI by third parties and (ii) prepare for the sharing and detrimental use of their sensitive information.

115. Doctus had a duty to employ proper procedures to prevent the unauthorized dissemination of the PII and PHI of Plaintiff and Class Members.

116. Doctus has admitted that the PII and PHI of Plaintiff and Class Members was wrongfully lost and disclosed to unauthorized third persons as a result of the Data Breach.

117. Doctus, through its actions and/or omissions, unlawfully breached its duties to Plaintiff and Class Members by failing to implement industry protocols and exercise reasonable care in protecting and safeguarding the PII and PHI of Plaintiff and Class Members during the time the PII and PHI was within Doctus's possession or control.

118. Doctus improperly and inadequately safeguarded the PII and PHI of Plaintiff and Class Members in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

119. Doctus failed to heed industry warnings and alerts to provide adequate safeguards to protect the PII and PHI of Plaintiff and Class Members in the face of increased risk of theft.

120. Doctus, through its actions and/or omissions, unlawfully breached its duty to Plaintiff and Class Members by failing to have appropriate procedures in place to detect and prevent dissemination of the PII and PHI.

121. Doctus breached its duty to exercise appropriate clearinghouse practices by failing to remove from the internet-accessible environment any PII and PHI it was no longer required to retain pursuant to regulation and which Doctus had no reasonable need to maintain in an internet-accessible environment.

122. Doctus, through its actions and/or omissions, unlawfully breached its duty to adequately and timely disclose to Plaintiff and Class Members the existence and scope of the Data Breach.

123. But for Doctus's wrongful and negligent breach of duties owed to Plaintiff and Class Members, the PII and PHI of Plaintiff and Class Members would not have been compromised.

124. There is a close causal connection between Doctus's failure to implement security measures to protect the PII and PHI of Plaintiff and Class Members and the harm, or risk of imminent harm suffered by Plaintiff and Class Members. The PII and PHI of Plaintiff and Class Members was lost and accessed as the proximate result of Doctus's failure to exercise reasonable care in safeguarding such PII and PHI by adopting, implementing, and maintaining appropriate security measures.

125. As a direct and proximate result of Doctus's negligence. Plaintiff and Class Members have suffered and will suffer injury, including but not limited to:

a. actual identity theft;
b. the loss of the opportunity of how their PII and PHI is used;
c. the compromise, publication, and/or theft of their PII and PHI;
d. out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII and PHI;
e. lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future

consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft;

f. costs associated with placing freezes on credit reports;

g. the continued risk to their PII and PHI, which remain in Doctus's possession and is subject to further unauthorized disclosures so long as Doctus fails to undertake appropriate and adequate measures to protect the PII and PHI of Plaintiff and Class Members; and

h. future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII and PHI compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members.

126. As a direct and proximate result of Doctus's negligence, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

127. Additionally, as a direct and proximate result of Doctus's negligence, Plaintiff and Class Members have suffered which remain in Doctus's possession and is subject to further unauthorized disclosures so long as Doctus fails to undertake appropriate and adequate measures to protect the PII and PHI in its continued possession.

128. As a direct and proximate result of Doctus's negligence, Plaintiff and Class Members are entitled to recover actual, consequential, and nominal damages.

## COUNT II
**Breach of Implied Contract**
**(On Behalf of Plaintiff and Class Members)**

129. Plaintiff and Class Members re-allege and incorporate by reference herein all of the preceding paragraphs.

130. In obtaining services from Doctus, Plaintiff and Class Members provided and entrusted their PII and PHI to Doctus.

131. Doctus required Plaintiff and Class Members to provide and entrust their PII and PHI as condition of obtaining services from Doctus.

132. As a condition of obtaining services from Doctus, Plaintiff and Class Members provided and entrusted their PII and PHI. In so doing, Plaintiff and Class Members entered into implied contracts with Doctus by which Doctus agreed to safeguard and protect such PII and PHI, to keep such PII and PHI secure and confidential, and to timely and accurately notify Plaintiff and Class Members if their PII and PHI had been compromised or stolen.

133. Plaintiff and Class Members fully performed their obligations under the implied contracts with Doctus.

134. Doctus breached the implied contracts it made with Plaintiff and Class Members by failing to implement appropriate technical and organizational security measures designed to protect their PII and PHI against accidental or unlawful unauthorized disclosure or unauthorized access and otherwise failing to safeguard and protect their PII and PHI and by failing to provide timely and accurate notice to them that PII and PHI was compromised as a result of the Data Breach.

135. As a direct and proximate result of Doctus's above-described breach of implied contract, Plaintiff and Class Members have suffered (and will continue to suffer) the threat of the sharing and detrimental use of their confidential information; ongoing, imminent, and impending threat of identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; loss of the confidentiality of the stolen confidential data; the illegal sale of the compromised data on the dark web; expenses and/or time spent on credit monitoring and identity theft insurance; time spent scrutinizing bank statements, credit card statements, and credit reports; expenses and/or time spent initiating fraud alerts, decreased credit scores and ratings; lost work time; and other economic and non-economic harm.

136. As a direct and proximate result of Doctus's above-described breach of implied contract, Plaintiff and Class Members are entitled to recover actual, consequential, and nominal damages.

**COUNT III**
**Violation of the California Confidentiality of Medical Information Act**
**Cal. Civ. Code. § 56, *et seq.***
**(On Behalf of Plaintiff and Class Members)**

137. Plaintiff and Class Members re-allege and incorporate by reference herein all of the preceding paragraphs.

138. Under the California Confidentiality of Medical Information Act, Civil Code § 56, et seq. (hereinafter referred to as the "CMIA"), "medical information" means "any individually identifiable information, in electronic or physical form, in possession of or derived from a provider of health care, healthcare service plan, pharmaceutical company, or contractor regarding a patient's medical history, mental or physical condition, or treatment." Cal. Civ. Code § 56.05.

139. Additionally, Cal. Civ. Code § 56.05 defines "individually identifiable" as meaning that "the medical information includes or contains any element of personal identifying information sufficient to allow identification of the individual, such as the patient's name, address, electronic mail address, telephone number, or social security number, or other information that, alone or in combination with other publicly available information, reveals the identity of the individual."

140. Under Cal. Civ. Code § 56.101(a) of the CMIA: (a) Every provider of health care, health care service plan, pharmaceutical company, or contractor who creates, maintains, preserves, stores, abandons, destroys, or disposes of medical information shall do so in a manner that preserves the confidentiality of the information contained therein. Any provider of health care, health care service plan, pharmaceutical company, or contractor who negligently creates, maintains, preserves, stores, abandons, destroys, or disposes of medical information shall be subject to the remedies and penalties provided under subdivisions (b) and (c) of Section 56.36.

141. At all relevant times, Doctus was a health care contractor within the meaning of Civil Code § 56.05(d) because it is a "medical group, independent practice association, pharmaceutical benefits manager, or medical service organization and is not a health care service plan or provider of health care." In the alternative, Doctus is a health care provider within the meaning of Civil Code § 56.05(m), because it is a "clinic, health dispensary, or health facility licensed pursuant to Division 2 (commencing with Section 1200) of the Health and Safety Code.".

142. Plaintiff and Class Members are Doctus's customers' patients, as defined in Civ. Code § 56.05(k).

143. Plaintiff and Class Members provided their personal medical information to Doctus.

144. At all relevant times, Doctus created, maintained, preserved, stored, abandoned, destroyed, or disposed of medical information in the ordinary course business.

145. As a result of the Data Breach, Doctus has misused, disclosed, and/or allowed third parties to access and view Plaintiff's and Class Members' personal medical information without their written authorization compliant with the provisions of Civil Code § 56, et seq. As a farther result of the Data Breach, the confidential nature of the medical information was breached as a result of Doctus's negligence.

146. Specifically, Doctus knowingly allowed and affirmatively acted in a manner that actually allowed unauthorized parties to access and view Plaintiff's and the Class Members' PHI/PII, which was viewed and used when the unauthorized parties engaged in the above-described fraudulent activity. Doctus's misuse and/or disclosure of medical information regarding Plaintiff and Class Members constitutes a violation of Civil Code §§ 56.10, 56.11, 56.13, and 56.26.

147. As a direct and proximate result of Doctus's wrongful actions, inaction, omissions, and failure to exercise ordinary care, Plaintiff's and the Class Members' PII and PHI was disclosed without written authorization.

148. By disclosing Plaintiff's and Class Members' Private Information without their written authorization, Doctus violated California Civil Code § 56, *et seq*., and its legal duty to protect the confidentiality of such information.

149. Doctus also violated Sections 56.06 and 56.101 of the California CMIA, which prohibit the negligent creation, maintenance, preservation, storage, abandonment, destruction or disposal of confidential personal medical information.

150. As a direct and proximate result of Doctus's wrongful actions, inaction, omissions, and want of ordinary care that directly and proximately caused the Data Breach, Plaintiff's and Class. Members' personal medical information was viewed by, released to, and disclosed to third parties without Plaintiff's or Class Members' written authorization.

151. As a direct and proximate result of Doctus's above-described wrongful actions, inaction, omissions, and want of ordinary care that directly and proximately caused the Data Breach and its violation of the CMIA, Plaintiff and Class Members are entitled to (i) actual damages, (ii) nominal damages of $1,000 per Plaintiff and Class Members, (iii) punitive damages of up to $3,000 per Plaintiff and Class Member, and (iv) attorneys' fees, litigation expenses and court costs under California Civil Code $ 56.35.

**<u>COUNT IV</u>**
**Violation of the California Unfair Competition Law**
**Cal. Bus. & Prof. Code § 17200, *et seq*. - Unlawful Business Practices**
**(On Behalf of Plaintiff and Class Members)**

152. Plaintiff and Class Members re-allege and incorporate by reference herein all of the preceding paragraphs.

153. Doctus has violated Cal. Bus. and Prof. Code § 17200, et seq., by engaging in unlawful, unfair or fraudulent business acts and practices and unfair, deceptive, untrue or misleading advertising that constitute acts of "unfair competition" as defined in Cal Bus. Prof. Code § 17200 with respect to the services provided to the Class.

154. Doctus engaged in unlawful acts and practices with respect to the services by establishing the substandard security practices and procedures described herein; by soliciting and collecting the PII and PHI of Plaintiff and Class Members with knowledge that the information

would not be adequately protected; and by storing the PII and PHI of Plaintiff and Class Members in an insecure environment in violation of California's data breach statute, Cal. Civ. Code § 1798.81.5, which requires Doctus to take reasonable methods of safeguarding the PII and PHI of Plaintiff and Class Members.

155. As a direct and proximate result of Doctus's unlawful practices and acts, Plaintiff and Class Members were injured and lost money or property, including but not limited to the price received by Doctus for the services, the loss of Plaintiff's and Class Members' legally protected interest in the confidentiality and privacy of their PII and PHI, nominal damages, and additional losses as described above.

156. Doctus knew or should have known that Doctus's data security practices were inadequate to safeguard the PII and PHI of Plaintiff and Class Members and that the risk of a data breach or theft was highly likely, especially given Doctus's inability to adhere to basic encryption standards and data disposal methodologies. Doctus's actions in engaging in the above-named unlawful practices and acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of members of the Class.

157. Plaintiff and Class Members seek relief under Cal. Bus. & Prof. Code § 17200, et seq., including, but not limited to, restitution to Plaintiff and Class Members of money or property that Doctus may have acquired by means of Doctus's unlawful, and unfair business practices, restitutionary disgorgement of all profits accruing to Doctus because of Doctus's unlawful and unfair business practices, declaratory relief, attorneys' fees and costs (pursuant to Cal. Code Civ. Proc. § 1021.5), and injunctive or other equitable relief.

**COUNT V**
**Violation of California's Unfair Competition Law**
**Cal. Bus. & Prof. Code § 17200, *et seq.* – Unfair Business Practices**
**(On Behalf of Plaintiff and Class Members)**

158. Plaintiff and Class Members re-allege and incorporate by reference herein all of the preceding paragraphs.

159. Doctus engaged in unfair acts and practices with respect to the services by establishing the sub-standard security practices and procedures described herein by soliciting and

collecting the PII and PHI of Plaintiff and Class Members with knowledge that the information would not be adequately protected and by storing the PII and PHI of Plaintiff and Class Members in an insecure electronic environment These unfair acts and practices were immoral, unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious to Plaintiff and Class Members. They were likely to deceive the public into believing their PII and PHI was securely stored when it was not. The harm these practices caused to Plaintiff and Class Members outweighed their utility, if any.

160. Doctus engaged in unfair acts and practices with respect to the provision of services by failing to take proper action following the Data Breach to enact adequate privacy and security measures and protect the PII and PHI of Plaintiff and Class Members from further unauthorized disclosure, release, data breaches, and theft. These unfair acts and practices were immoral, unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious to Plaintiff and Class Members. They were likely to deceive the public into believing their PII and PHI were securely stored when they were not. The harm these practices caused to Plaintiff and Class Members outweighed their utility, if any.

161. As a direct and proximate result of Doctus's acts of unfair practices, Plaintiff and Class Members were injured and lost money or property; including but not limited to the price received by Doctus for the services, the loss of Plaintiff's and Class Members' legally protected interest in the confidentiality and privacy of their PII and PHI, nominal damages, and additional losses as described above.

162. Doctus knew or should have known that Doctus's data security practices were inadequate to safeguard the PII and PHI of Plaintiff and Class Members and that the risk of a data breach or theft was highly likely, including Doctus's failure to properly encrypt files containing sensitive PII and PHI. Doctus's actions in engaging in the above-named unlawful practices and acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of Plaintiff and Class Members.

163. Plaintiff and Class Members seek relief under Cal. Bus. & Prof Code § 17200, et seq., including, but not limited to, restitution to Plaintiff and Class Members of money or

property that the Doctus may have acquired by means of Doctus's unfair business practices, restitutionary disgorgement of all profits accruing to Doctus because of Doctus's unfair business practices, declaratory relief, attorneys' fees and costs (pursuant to Cal. Code Civ. Proc. § 1021.5), and injunctive or other equitable relief.

**COUNT VI**
**Violation Of The California Customer Records Act, § 1798, *et seq.***
**(On behalf of Plaintiff and Class Members)**

164. Plaintiff and Class Members re-allege and incorporate by reference herein all of the preceding paragraphs.

165. Section 1798.2 of the California Civil Code requires any "person or business that conducts business in California, and that owns or licenses computerized data that includes personal information" to "disclose any breach of the security of the system following discovery or notification of the breach in the security of the data to any resident of California whose unencrypted personal information was, or is reasonably believed to have been, acquired by an unauthorized person." Under section 1798.82, the disclosure "shall be made in the most expedient time possible and without unreasonable delay…"

166. The CCRA further provides; "Any person or business that maintains computerized data that includes personal information that the person or business does not own shall notify the owner or licensee of the information of any breach of the security of the data immediately following discovery, if the personal information was, or is reasonably believed to have been, acquired by an unauthorized person." (Cal. Civ. Code, § 1798.82(b).)

167. Any person or business that is required to issue a security breach notification under the CCRA shall meet all of the following requirements:

a. The security breach notification shall be written in plain language;

b. The security breach notification shall include, at a minimum, the following information;

   i. The name and contact information of the reporting person or business subject to this section;

ii. A list of the types of personal information that were or are reasonably believed to have been the subject of a breach;

iii. If the information is possible to determine at the time the notice is provided, then any of the following:

1. The date of the breach;
2. The estimated date of the breach; or
3. The date range within which the breach occurred. The notification shall also include the date of the notice.

c. Whether notification was delayed as a result of a law enforcement investigation, if that information is possible to

d. A general description of the breach incident, if that information is possible to determine at the time the notice is provided; and

e. The toll-free telephone numbers and addresses of the major credit reporting agencies if the breach exposed a Social Security number or a driver's license or California identification card number.

168. The Data Breach described herein constituted a "breach of the security system" of Doctus.

169. As alleged above, Doctus unreasonably delayed informing Plaintiff and Class Members about the Data Breach, affecting their PII/PHI, after Doctus knew the Data Breach had occurred.

170. Doctus failed to disclose to Plaintiff and Class Members, without unreasonable delay and in the most expedient time possible, the breach of security of their unencrypted, or not properly and securely encrypted, PII/PHI when Doctus knew or reasonably believed such information had been compromised.

171. Doctus's ongoing business interests gave Doctus incentive to conceal the Data Breach from the public to ensure continued revenue.

172. Upon information and belief, no law enforcement agency instructed Doctus that timely notification to Plaintiff and Class Members would impede its investigation.

173. As a result of Doctus's violation of California Civil Code section 1798.82, Plaintiff and Class Members were deprived of prompt notice of the Data Breach and were thus prevented from taking appropriate protective measures, such as securing identity theft protection or requesting a credit freeze. These measures could have prevented some of the damages suffered by Plaintiff and Class Members because their stolen information would have had less value to identity thieves.

174. As a result of Doctus's violation of California Civil Code section 1793.82, Plaintiff and Class Members suffered incrementally increased damages separate and distinct from those simply caused by the Data Breach itself.

175. Plaintiff and Class Members seek all remedies available under California Civil Code section 1798.84, including, but not limited to the damages suffered by Plaintiff and Class Members as alleged above and equitable relief.

176. Doctus's misconduct as alleged herein is fraud under California Civil Code section 3294(c)(3) in that it was deceit or concealment of a material fact known to the Doctus conducted with the intent on the part of Doctus of depriving Plaintiff and Class Members of "legal rights or otherwise causing injury." In addition, Doctus's misconduct as alleged herein is malice or oppression under California Civil Code section 3294(c)(l) and (c) in that it was despicable conduct earned on by Doctus with a willful and conscious disregard of the rights or safety of Plaintiff and Class Members and despicable conduct that has subjected Plaintiff and Class Members to cruel and unjust hardship in conscious disregard of their rights. As a result, Plaintiff and Class Members are entitled to punitive damages against Doctus under the California Civil Code.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of Class Members, request judgment against Doctus and that the Court grant the following:

A. An Order certifying the Class, and appointing Plaintiff and her Counsel to represent the Class;

B. Equitable relief enjoining Doctus from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of the PII and PHI of Plaintiff and Class Members, and from refusing to issue prompt, complete, any accurate disclosures to Plaintiff and Class Members;

C. Injunctive relief requested by Plaintiff, including but not limited to, injunctive and other equitable relief at is necessary to protect the interests of Plaintiff and Class Members, including but not limited to an order:

i. prohibiting Doctus from engaging in the wrongful and unlawful acts described herein;

ii. requiring Doctus to protect, including through encryption, all data collected through the course of its business in accordance with all applicable regulations, industry standards, and federal, state or local laws;

iii. requiring Doctus to delete, destroy, and purge the personal identifying information of Plaintiff and Class Members unless Doctus can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiff and Class Members;

iv. requiring Doctus to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of the PII and PHI of Plaintiff and Class Members;

v. prohibiting Doctus from maintaining the PII and PHI of Plaintiff and Class Members on a cloud-based database;

vi. requiring Doctus to engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Doctus's systems on a periodic basis, and ordering Doctus to promptly correct any problems or issues detected by such third-party security auditors;

vii. requiring Doctus to engage independent third-party security auditors and internal personnel to run automated security monitoring;

viii. requiring Doctus to audit, test, and train its security personnel regarding any new or modified procedures;

ix. requiring Doctus to segment data by, among other things, creating firewalls and access controls so that if one area of Doctus's network is compromised, hackers cannot gain access to other portions of Doctus's systems;

x. requiring Doctus to conduct regular database scanning and securing checks;

xi. requiring Doctus to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling personal identifying information, as well as protecting the personal identifying information of Plaintiff and Class Members;

xii. requiring Doctus to routinely and continually conduct internal training and education, and on an annual basis to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

xiii. requiring Doctus to implement a system of tests to assess its respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees' compliance with Doctus's policies, programs, and systems for protecting personal identifying information;

xiv. requiring Doctus to implement, maintain, regularly review, and revise as necessary a threat management program designed to appropriately monitor Doctus's information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured, tested, and updated;

xv. requiring Doctus to meaningfully educate all Class Members about the threats that they face as a result of the loss of their confidential personal

identifying information to third parties, as well as the steps affected individuals must take to protect themselves;

xvi. requiring Doctus to implement logging and monitoring programs sufficient to track traffic to and from Doctus's servers; and for a period of 10 years, appointing a qualified and independent third-party assessor to conduct a SOC 2 Type 2 attestation on an annual basis to evaluate Doctus's compliance with the terms of the Court's final judgment, to provide such report to the Court and to counsel for the class, and to report any deficiencies with compliance of the Court's final judgment;

D. For an award of damages, including actual, nominal, statutory, and consequential damages, as allowed by law in an amount to be determined;

E. For an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

F. For prejudgment interest on all amounts awarded; and

G. Such other and further relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands that this matter be tried before a jury.

Dated: July 17, 2026

*/s/ Jonathan R. Marshall*

Jonathan R. Marshall (SBN# 350631)
**BAILEY GLASSER LLP**
580 California Street, 12th Floor
San Francisco, CA 94104
(304) 345-6555
jmarshall@baileyglasser.com

Bart D. Cohen (*pro hac vice* forthcoming)
**BAILEY GLASSER LLP**
1055 Thomas Jefferson Street NW
Suite 540
Washington, DC 20007
(202) 463-2101
bcohen@baileyglasser.com

*Attorneys for Plaintiff and the Proposed Class*